RECEIVED
DEC - 2 2013
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

YOLANDA YOUNG, ET AL. CIVIL ACTION NO. 12-2551

VERSUS JUDGE DOHERTY

LOUIS AKAL, ET AL. MAGISTRATE JUDGE HANNA

**MEMORANDUM RULING**

Pending before this Court is the "Motion for Summary Judgment" [Doc. 18] filed by defendants Louis Ackal (in his official and individual capacities as the Sheriff of New Iberia) and Sergeant Carmen Garcia (in her official and individual capacities as a police officer for the City of New Iberia) (hereinafter, collectively, "the defendants"). By way of their motion, defendants seek "dismissal of the plaintiffs' [sic] claims against them," on grounds Sheriff Ackal and Deputy Garcia "are entitled to qualified immunity from [the] constitutional claims brought under 42 U.S.C. §1983."[1] The motion is opposed by plaintiffs Yolanda Young and Annalexis Lewis, individually and on behalf of her minor children Annalexis Lewis, Johntiajah, Jaquan, and Jaazanniah Lewis [Doc. 24].

For the following reasons, defendants' motion for summary judgment is GRANTED.

**I. Factual and Procedural Background**

The parties largely agree on the factual scenario which places this matter before the Court. The undisputed facts are as follows:

- The Sugar Cane Festival is an annual event held in New Iberia, Louisiana.

[1] A third defendant, identified only as "Deputy Broussard," does not join in this motion, and in fact, has made no appearance in this case.

- In 2011, the festival was held on Sunday, September 25.

- A contingent of Iberia Parish Sheriff's deputies undertook security responsibilities for the festival as off-duty detail work.

- The festival promoters had a permit allowing the festival to operate on September 25, 2011 from 10:00 a.m. until 6:00 p.m. Sgt. Carmen Garcia was one of those deputies working the off-duty security detail at the festival.

- Sheriff Ackal was not on the scene.

- Shortly before the conclusion of the permitted time of the festival, the deputies working the festival security detail developed a plan to clear Hopkins Street, which is a state highway, of festival-goers in order to restore traffic flow on this state highway.

- The plan called for deputies to proceed in their marked patrol units down Hopkins Street utilizing the units' public address, lights, and siren system to notify festival-goers that the festival was over and the streets must be cleared.

- These attempts to peacefully disperse the crowd and restore normal traffic flow were largely unsuccessful, due to the large size of the crowd and its refusal to follow the deputies' instructions to clear the roadway.

- After several unsuccessful attempts, the deputies at the scene attempted on foot to disperse the crowd and clear the roadway but these attempts to restore normal operation of the roadway were again met with resistance by the crowd and were largely unsuccessful.

- An aerosol form of tear gas (brand name: "Clear Out") was deployed to assist deputies in their efforts to disperse the crowd that had gathered and refused to leave the area, to restore order, and to return Hopkins Road to normal vehicular traffic.

- The deputies providing security for the Festival tried in vain to clear the roadway for several hours and were finally able to restore order and normal traffic flow on Hopkins Road by 10:30 p.m.

- The petitioners were "in their home at 719 Hopkins Street" when the tear gas was deployed.

The plaintiffs filed suit against Sheriff Ackal, Sgt. Garcia, and an individual identified only

as "Deputy Broussard"[2] on September 24. 2012. In her complaint, Yolanda Young alleges she and her minor children sustained injuries to their lungs and eyes, as well as psychological injuries, after coming into contact with the tear gas deployed by the police. Although the tear gas was deployed into the crowd, the plaintiffs allege they were injured "while in their home on Hopkins St." Although drafted inartfully, the plaintiffs' first complaint alleges claims of negligence, excessive force, and a failure to train and supervise deputies, all seemingly under 42 U.S.C. §1983 without reference to any specific constitutional violations.[3]

Plaintiffs filed a First Amended Complaint – the Complaint that is the subject of this Court's scrutiny in connection with the instant motion – on May 30, 2013. Plaintiffs' Amended Complaint continues to be deficient in several respects, most specifically, in failing to specifically delineate each claim against each defendant, and in failing to properly identify the governing law for each claim.[4] As best this Court can determine, the plaintiffs allege four claims against Sheriff Ackal and Deputy

---

[2] Again, "Deputy Broussard" has not made an appearance in this lawsuit.

[3] Because of the vagueness of the plaintiffs' first complaint, the magistrate judge ordered plaintiffs to file a Rule 7(a) Reply to clarify their claims and address the qualified immunity defense pled by the defendants [Doc. 7]. When the plaintiffs did not file their Rule 7(a) Reply within the deadline set forth by the magistrate judge, an Order to Show Cause [Doc. 9] was issued, ordering the plaintiffs to appear and show cause why their complaint should not be stricken.

A show cause hearing was conducted on April 30, 2012, at which time plaintiffs' counsel requested that they be permitted to file an amended complaint. The magistrate judge granted plaintiffs' request and issued the following order:

> IT IS ORDERED that the plaintiffs shall file, not later than thirty days after the date of this order, a reply to the qualified immunity defense pleaded by the defendants. The reply must allege with specificity the constitutional rights that were violated, the facts that support these allegations, the persons involved in these alleged violations, and the reasons that the asserted defense of qualified immunity is inapplicable. The purpose for this order was explained in the undersigned's order of January 4, 2013. (Rec. Doc. 7).

[Doc. 11].

[4] In fact, this Court sees little difference between the original Complaint and the First Amended Complaint, except for the addition of a single reference to "violation of the 1st, 4th and 14th Amendments." *See* Plaintiffs' First Amended Complaint, Doc. 12, at ¶XII.

Garcia in both their official and individual capacities: (1) a §1983 claim for excessive force in violation of the plaintiffs' First, Fourth, and Fourteenth Amendment rights (notwithstanding the framing of the "cause of action" in terms of §1983, the plaintiffs allege the actions of the defendants were "negligent);" (2) the second cause of action does not appear to be a cause of action at all, but rather, an allegation that the defendants are not entitled to qualified immunity; (3) a §1983 claim for "the improper training, oversight, control and improperly equipping the Deputies by the other defendants...."; and (4) a state law cause of action for negligence under Louisiana Civil Code Article 2315.

The defendants filed the instant motion for summary judgment on September 16, 2013, arguing all claims of the plaintiffs should be dismissed, as the defendants are qualifiedly immune from suit under the circumstances of this case.[5]

---

[5] This Court takes the opportunity to set forth herein the entirety of the plaintiffs' response to the instant motion for summary judgment:

MEMORANDUM IN OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT,**

In a case where summary judgment was denied on the basis of qualified immunity by deputies using pepper spray on unlawful protestors in the Ninth Circuit Court of Appeals noted as to the issue of whether a constitutional right had been violated

> We concluded in our opinion that viewing the evidence as favorable to the protestors, a rational juror could conclude that the use of pepper spray against the protestors constituted excessive force and that Lewis and Phillip were liable for the protestors' unconstitutional injury. 240 F.3d at 1199-1209. This analysis is consistent with Saucier's first Inquiry:
>
> [*Saucier v. Katz*, 121 S.Ct. at 2156]
> viewing the facts in the light most favorable to the protestors, Lewis and Phillip violated the protestors' Fourth Amendment right to be free from excessive force.

**ESTABLISHMENT OF THE CONSTITUTIONAL RIGHT AT THE TIME OF THE OFFENSE**

*Humbolt [Headwater Forest Defense v. County of Humbolt,* 276 Fed.3d 1125 (9th Cir. 2002) addresses this as well and says that it would be "... clear to a reasonable officer that using pepper spray against the protestors was excessive" ... the Fourth Amendment permits law enforcement officers only to use such force as is objectively

## II. Summary Judgment Standard

A party claiming relief, or a party against whom relief is sought, may move, with or without supporting affidavits, for summary judgment on all or part of the claim. Fed. R. Civ. Proc. 56(a) and (b). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c)(1)(2).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. Proc. 56(e). In general, as summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. *Id.* at 322; *see also*, *Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient

---

reasonable under the circumstances. *Humbolt* was decided in 2002, thus putting law enforcement all over the country on notice that gas applied to peaceful individuals was a violation of the Fourth Amendment. The Court also stated in *Humbolt* that "spraying the protestors with pepper spray and then allowing them to suffer without providing them water is clearly excessive under the circumstances."

Of course *Lanier [United States v. Lanier,* 520 US 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)] says that the establishment of the Constitutional right can be in the conscience of the man himself with no need of a particular date, but *Humbolt* was decided in 2002 well before this unwarranted attack on children and adults, on citizens spontaneously enjoying themselves barbecuing in the trust that they would be protected.

These rights were clearly established prior to this unlawful attack, and if the officers needed a reminder that innocent children and peaceful adults deserve better treatment, *Humbolt* provided it.

[Doc. 24].

> evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The Court later states:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is a genuine issue for trial. The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Id.* at 888-89 (1990)(internal quotations and citations omitted). The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense, as follows:

> When a governmental official with discretionary authority is sued for damages under section 1983 and properly raises the defense of qualified immunity, the plaintiff bears the burden of rebutting that defense. In ruling on a motion for summary judgment based on qualified immunity, the court first determines whether there is evidence to sustain a finding that the defendant's complained of conduct violated plaintiff's constitutional rights. If not, no further inquiry is needed and the defendant is entitled to qualified immunity. If so, the inquiry proceeds to determine whether there is evidence to sustain a finding that under the existing circumstances it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. If not, the defendant is entitled to qualified immunity.

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301–302 (5th Cir.2004) (emphasis added) (citations and quotations omitted).

In evaluating the evidence provided in support of, and in opposition to, a Motion for Summary Judgment, "the court must view facts and inferences in the light most favorable to the party opposing the motion." *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5th Cir.2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party." *Id.* In evaluating evidence to determine whether

a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001).

## III. Qualified Immunity

It is well-settled the performance of official duties creates two potential liabilities: individual-capacity liability for the person and official-capacity liability for the municipality. *See, e.g., Turner v. Houma Mun. Fire and Police Civil Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000). The *Turner* court noted:

> Courts discuss immunity defenses without clearly articulating to whom and in which capacity those defenses apply, resulting in confusion which has an obvious cause. In any case in which a defendant government official is sued in his individual and official capacity, and the city or state is also sued, there potentially exists an overlapping cause of action. The official-capacity claims and the claims against the governmental entity essentially merge. *Thus, when the suit against the city or state fails for a jurisdictional, procedural, or pleading defect, the remaining immunity discussion by the courts necessarily concerns only the personal liability of individuals sued in their individual capacities.*

*Id.* at 484 (emphasis added).

In the instant case, the municipality of New Iberia is not a defendant. Nevertheless, "a suit against a state official in his ... official capacity is not a suit against the official but rather is a suit against the official's office," and thus is "no different from a suit against the State itself." *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 2099, 2104-05, 87 L.Ed.2d 114 (1985); *Will v. Michigan Dept' of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45. Section 1983 does not provide for a remedy against the state; such an action is barred by the Eleventh

Amendment. *Kentucky v. Graham*, 473 U.S. at 165-66; *Will*, 491 U.S. at 71, 109 S.Ct. at 2312. Thus, to the extent the plaintiffs' claims against Sheriff Ackal and Deputy Garcia are asserted against these defendants in their *official capacities*, such claims are barred by the Eleventh Amendment and are DISMISSED WITHOUT PREJUDICE[6] herein.

The Court now turns to the defendants' defense of qualified immunity in their individuals capacities. *See, generally, Kentucky v. Graham*, 473 U.S. at 166–67 (holding officials in their individual capacities "may ... be able to assert personal immunity defenses," including qualified immunity, that are not available in official-capacity suits); *Sanders–Burns v. City of Plano*, 594 F.3d 366, 371 (5th Cir.2010) (stating qualified immunity is "a defense that is only relevant to individual capacity claims"). When a government official abuses his office, an action for damages may be the only realistic avenue for vindication of a petitioner's constitutional guarantees. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). On the other hand, allowing suits for money damages against government officials "can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Id.* The jurisprudence has attempted to accommodate these conflicting concerns "by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Id.*

The court's first inquiry in the examination of a defendant's claim of qualified immunity is whether the plaintiff has "alleg[ed] the violation of a clearly established constitutional right." *King*

---

6 Because sovereign immunity deprives the court of jurisdiction, claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice. *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).

*v. Chide*, 974 F.2d 653, 656-57 (5th Cir. 1992), *citing Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). The next step is to determine the standard by which to judge the reasonableness of the officers' behavior. Qualified immunity cloaks a police officer from liability if a reasonably competent law enforcement agent would not have known that his actions violated clearly established law. *Jackson v. Beaumont Police Dept.*, 958 F.2d 616, 620 (5th Cir.1992), *citing James v. Sadler*, 909 F.2d 834, 838 (5th Cir.1990). "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." *Id*; *see also Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997) ("Qualified immunity shields government officials performing discretionary functions from civil damage liability if their actions were objectively reasonable in light of clearly established law.") "[Q]ualified immunity... provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Rocha v. Schroeder*, 283 Fed.Appx. 305, 306 (5th Cir. 2008). There is no immunity if no reasonably competent officer would have thought his conduct was lawful, "but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* In excessive force cases, the reasonableness of the official use of force, for purpose of the Fourth Amendment, turns on a careful balancing of the nature and quality of the intrusion on individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Martinez-Aguero v. Gonzales*, 459 F.3d 618, 626 (5th Cir. 2006).

The court applies "current law to the first step [in the qualified immunity analysis] and the law at the time of the incident to the second step, which may sometimes result in applying different tests to the two steps." *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008), *citing Flores v. City of*

*Palacios*, 381 F.3d 391, 395 n.3 (5th Cir. 2004).

For summary judgment purposes, once the defendant initially pleads his good faith immunity and establish that he was acting within the scope of his discretionary authority, *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir.2001), the burden then shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id.* "To rebut a defendant's qualified immunity defense, the plaintiff must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Gibson v. Kilpatrick*, — F.3d —, 2013 WL 5806947 (5th Cir. 2013), *quoting Ashcroft v. Al–Kidd*, 131 S.Ct. 2074, 2080 (2011). "A court may consider either prong of the qualified immunity analysis first." *Id.*[7]

**IV. Federal Claims**

**1. First Amendment Claims**

Under *Siegert*, the court's first inquiry in the examination of a defendant's claim of qualified immunity is whether the plaintiff has "alleg[ed] the violation of a clearly established constitutional right." *See King v. Chide*, 974 F.2d 653, 656-57 (5th Cir. 1992), *citing Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Thus, the threshold inquiry is whether the plaintiffs

[7] Although qualified immunity is a two-step analysis, the threshold issue presented by any case arising under Section 1983 is whether a plaintiff has sufficiently alleged a deprivation of a right secured by the Constitution. *Hernandez v. Texas Dept of Protective and Regulatory Serv.*, 380 F.3d 872, 879 (5th Cir. 2004), *citing Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). It is well-established that Section 1983 does not create substantive rights; rather, it merely provides civil remedies for deprivations of rights established under the Constitution or federal laws. *Hernandez*, 3870 F.3d at 879, *citing Felton v. Polles*, 315 F.3d 470, 479 (5th Cir.2002) (Section 1983 "is not itself a source of substantive rights; instead, it provides a method for vindicating federal rights elsewhere conferred"). Thus, claims under §1983 must be evaluated by reference to the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

In the instant case, the plaintiffs' first, second and third "causes of action" – to the extent all three can properly be termed "causes of action" – are alleged under §1983 for the alleged violation of plaintiffs' First, Fourth, and Fourteenth Amendment rights, and essentially involve the plaintiffs' right to be free from the use of excessive force in the form of tear gas used by the police officers on the date in question.

allege they have been deprived of rights secured by the First Amendment. Despite a bare-bones allegation in their First Amended Complaint that their First Amendment rights were violated, this Court notes the plaintiffs fail to address or otherwise allege how, specifically, their First Amendment rights were violated.

The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble." U.S. CONST. amend. I, *cited in Club Retro, LLC v. Hilton*, 568 F.3d 181, 211 (5th Cir. 2009). In *Ellsworth v. City of Lansing*, 34 F.Supp.2d 571, 579 (W.D. Mich. Dec. 16, 1998), a case involving the use of tear gas by police officers to control and disperse an unruly crowd of protestors, the court noted in order to make out a First Amendment violation, "the motivation for the release of tear gas" must be "an intent to restrict plaintiff's speech." Here, there are no allegations that the deputies on the scene deployed tear gas with an intent to interfere with the First Amendment rights of either festival-goers or nearby residents, including the plaintiffs. The uncontroverted evidence shows the tear gas was deployed to disperse the crowd that was blocking a public roadway.

In *Hill v. Sheriff's Office Iberia Parish*, 2009 WL 928080 (W.D.La. 2009) (Walter, J.), the court addressed the question of the reasonableness of deployment of tear gas into a crowd in circumstances almost identical to those alleged in this case. In *Hill*, the police deployed tear gas into the crowd at the same location involved in the instant case (the corner of Hopkins and Robertson Streets) at the <u>2006</u> Sugar Cane Festival in New Iberia after the unruly crowd failed to disburse and continued to block a public roadway after the festival had ended. The district court adopted the Report and Recommendation of the magistrate judge, who noted:

> It is well established that a State or municipality has the right to regulate the use of city streets and other facilities to assure the safety and convenience of the people in

> their use and the concomitant right of the people of free speech and assembly. *Cox v.. State of La.*, 379 U.S. 536, 554, 85 S.Ct. 453, 464, 13 L.Ed.2d 471 (1965). Louisiana law prohibits people from hindering traffic by blocking public streets. La. Rev. Stat. Ann. § 14:100.1 (2004). Concomitantly, the First Amendment does not entitle a citizen to trespass, block traffic, or create hazards for others. *See Frye v. Police Dept. of Kansas City, Missouri*, 260 F.Supp.2d 796, 799 (W.D.Mo.2003); *Ellsworth v. City of Lansing*, 205 F.3d 1340 (6th Cir. Feb. 10, 2000) (picketers were subject to state and local laws designed to prohibit picketers from blocking ingress to and egress from private property).[8]

As in *Hill*, in the instant case, no one disputes the crowd needed to be dispersed and that under Louisiana law, it was lawful for the deputies to attempt to clear the streets. Moreover, the plaintiffs simply have not alleged that their "speech" was entitled to protection, and that in clearing the roadways by using tears gas, the deputies violated the free speech or free association rights of the plaintiffs under the First Amendment. Thus, this Court concludes the plaintiffs' allegations do not state a cognizable First Amendment claim, and this Court need not proceed to the second step of the analysis under *Siegert*. The defendants are entitled to dismissal with prejudice of the plaintiffs' First Amendment claims for these reasons.[9]

**2. Fourth Amendment Claims**

The most liberal and expansive interpretation of the plaintiffs' second claim is that the plaintiffs allege the defendants' use of tear gas violated their Fourth Amendment right to be free from the use of excessive force. Notwithstanding their couching of the claim in terms of a Fourth

---

[8] *Hill* was affirmed by the Fifth Circuit, which expressly approved the analysis of the magistrate judge. *See Hill v. Hebert*, 389 Fed. Appx. 414 (5th Cir. 2010) ("Satisfied that the patient and exhaustive analysis of the case confected by the magistrate judge in his Report and Recommendation reached the correct result for the correct reasons, and thus supports the orders and judgment of the district court, we affirm all rulings from which Plaintiffs-Appellants have appealed, including the above-said judgments of dismissal."). Interestingly, the plaintiffs in *Hill* were represented by the same attorney representing the plaintiffs in the instant matter.

[9] Dismissal of claims on grounds of qualified immunity constitutes a dismissal with prejudice. *See, e.g., Hill v. Sheriff's Office Iberia Parish*, 2009 WL 928080 (W. D. La. March 28, 2009), *aff'd*, 389 Fed. Appx. 414 (5th Cir. 2010).

Amendment violation, the plaintiffs nevertheless allege – throughout their First Amended Complaint – the actions of Sheriff Ackal and Sgt. Garcia in violating the plaintiffs' constitutional rights were "negligent."[10]

As an initial matter, this Court notes claims arising out of negligent acts do not give rise to relief under §1983. In *Daniels v. Williams*, the United States Supreme Court explained:

> Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.

474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). Thus, to the extent the plaintiffs' "Fourth Amendment" claims can be read to allege *negligent* acts on the part of Sheriff Ackal, there is no remedy for such claims under 1983, and the claims must be dismissed.

**a. Sheriff Ackal**

To the extent the claims can be interpreted to allege true violations of the Fourth Amendment, under *Siegert*, the next step in the analysis is to determine whether the plaintiffs have sufficiently alleged that they have been deprived of rights secured by the Fourth Amendment. To state a violation of the Fourth Amendment prohibition on excessive force, a plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need,

---

[10] In their First Amended Complaint, plaintiffs allege:

> XVIII.
>
> Plaintiffs aver that the excessive, unnecessary and illegal use of force by Defendants resulting in injuries and damages were caused by the concurrent fault and/or*negligence* and/or strict liability of Defendants in the following non-exclusive particulars:
>
> > A. *In acting in a careless and negligent manner* without due regard for the safety and constitutional rights of others; . . . .

Doc. 20 (emphasis added).

and (3) the use of force that was objectively unreasonable. *Bush v. Strain*, 513 F.3d 492, 500-01 (5th Cir. 2008), *citing Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). The Fifth Circuit has noted that although some injuries are so minor they are insufficient to satisfy the injury element as a matter of law, *Flores*, 381 F.3d at 397-98, *citing Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (handcuffing too tightly, without more, is not a constitutionally significant injury), an injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible—that is, objectively unreasonable under the circumstances. *Bush*, 513 F.3d at 501. The *Bush* court stated:

> The objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible. Specifically, the court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* at 501 (internal citations omitted).

In the instant case, Sheriff Ackal is alleged to have dispatched his deputies to the scene of the blocked roadway, as follows:

> V.
>
> On or about September 23, 2011[11] and September 25, 2011, deputies of the New Iberia Parish Sheriff's Department *were dispatched by the Sheriff, Louis Ackal*, his agents or assigns, to the intersection of Hopkins Street near Robertson in New Iberia, Parish of Iberia, State of Louisiana.
>
> VI.
>
> Some of the deputies were armed with tear gas cylinders administered by spray cans; other deputies were assisting, supervising and abetting the deputies so equipped and

[11] It is unclear to this Court what activity is alleged to have occurred on September 23, 2011, as the defendants have filed an affidavit stating the Sugar Cane Festival took place on September 25, 2011, and this fact is not disputed by the plaintiffs.

engaged in the illegal acts set out below.

X.

> The deputies, under the direction of Sheriff Ackal, applied tear gas to your petitioners, causing them severe discomfort, nausea and physical pain.[12]

Courts have held an unreasonable use of tear gas can violate an individual's right to be free from the use of excessive force under the Fourth Amendment. *See, e.g., Escobedo v. City of Fort Wayne*, 2008 WL 1971405 (N.D. Ind. May 5, 2008) (excessive force claims under the Fourth Amendment for use of tear gas survived summary judgment stage). *See also Fogarty v. Gallegos*, 523 F.,3d 1147, 1163 (10th Cir. 2008) (genuine issues of fact existed regarding whether the use of tear gas was reasonable under the circumstances, and issue was preserved for trial; appeal of denial of motion for summary judgment filed by defendant officers upheld on interlocutory appeal). Thus, assuming the veracity of the plaintiffs' allegations for purposes of this motion, the Court concludes the use of tear gas on the plaintiffs, and their resulting physical and psychological injuries, alleges injuries resulting "directly and solely from force that was excessive to the need and objectively unreasonable under the circumstances." Thus, the Court concludes the plaintiffs have sufficiently alleged a constitutional violation against Sheriff Ackal for violation of their Fourth Amendment rights.

At the next step in a qualified immunity analysis, the Court considers whether Sheriff Ackal's "use of force" was nevertheless objectively reasonable in light of clearly established law at the time the challenged conduct occurred. As an initial matter, this Court reiterates Sheriff Ackal is not alleged to have personally participated in the use of the tear gas. To be liable under section §1983, a supervisory official must be either personally involved in the acts causing the deprivation of a

---

[12] *See* Plaintiffs' First Amendment Complaint, Doc. 12, at ¶¶ V, VI, and X.

person's constitutional rights, or there must be a causal connection between an act of the sheriff and the constitutional violation sought to be redressed. *Gates v. Texas Dep't of Protective and Regulatory Serv.*, 537 F.3d 404, 435 (5th Cir. 2008). *See also Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983), *citing Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir.1981). Thus, supervisors, in their supervisory role, can be held liable under 1983 in their individual capacity for their participation in the deprivation of a constitutional right if there is a causal connection between the supervisor's wrongful conduct and the constitutional violation. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983), *citing Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir.1981). A causal connection may be established, for section 1983 purposes, where the constitutional deprivation and practices occur as a result of the implementation of the sheriff's affirmative wrongful policies by his subordinates, *Wanger v. Bonner*, 621 F.2d 675, 679 (5th Cir.1980), or where the sheriff wrongfully breaches an affirmative duty specially imposed upon him by state law, and as a result thereof, the complained of constitutional tort occurs. *Barksdale v. King*, 699 F.2d 744, 746 (5th Cir.1983). *Douthit*, 641 F.2d at 346; *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir.1976).

In *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 289 (5th Cir. 2002), the court stated:

> Supervisory liability may additionally exist "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." An official policy is:
>
> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] ... or by an official to whom the [entity] ha[s] delegated policy-making authority; or
>
> 2. A persistent, widespread practice of ... officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the

> entity's] policy.
>
> A plaintiff may also establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered.

*citing Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (internal quotations and citations omitted) (additional citations omitted) and *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992).

In the instant case, Sheriff Ackal's involvement in the use of the tear gas is his alleged "dispatching" of deputies to the scene to use tear gas to disperse the crowd. In support of his motion, Sheriff Ackal attests in his Affidavit that all officers who are authorized to use tear gas are trained to do so. In response, the plaintiffs have not demonstrated that Sheriff Ackal has promulgated an official policy that is "so deficient that the policy itself is a repudiation of constitutional rights."

Furthermore, the Fourth Amendment permits law enforcement officers to use force which is "objectively reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (1989). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight. The test of "reasonableness" must make allowance for the fact that the police are often forced to make immediate judgments, in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary in a particular situation. *Id.* at 396–97.

In the instant case, the defendants have attached the Affidavit of Sergeant Jeffery Schmidt of the Iberia Parish Sheriff's Office, who attests as follows:

- At the conclusion of the festival on September 25, 2011, he and other deputies met to discuss procedure and tactics to be used to re-open Hopkins Street.
- The plan to restore normal traffic flow to Hopkins Street involved the use of marked units that would be driven on Hopkins Street side-by-side to clear the roadway of pedestrians so that vehicular traffic could resume.

- At approximately 5:30 p.m., the deputies on scene attempted to implement that plan. Due to the size and the uncooperative nature of the crowd, and despite several attempts utilizing the marked units with lights, sirens, and PA announcements, the large crowd remained on Hopkins Street blocking vehicular traffic past the time when the festival was scheduled to end.

- Over the course of the next several hours, various attempts were made to disperse the crowd and clear Hopkins St. by using verbal instructions, enlisting the assistance of members of the crowd, requesting assistance from event organizers and participants, and other non-physical tactics, which were all unsuccessful in getting the crowd to clear Hopkins Street.

- The area of greatest concern was on Hopkins Street at Lombard Street where a stage had been set up and a concert was ongoing following the conclusion of the festival's permitted hours. As it began to get dark, the deputies withdrew from the area and regrouped at the patrol center, with the hope that the situation would de-escalate without the presence of law enforcement. Shortly thereafter, however, reports of violence and fighting were received and the deputies on the scene returned to the area in an attempt to restore order.

- As the deputies approached the crowd on Hopkins St., near Lombard St., the situation appeared to be worse with a large number of people still in the street blocking the road, causing disturbances, and shouting at the officers. Deputies tried once again to clear the streets advising people with children that they should bring their children home. At approximately 9:30 p.m., and only after repeated instructions to the crowd to disperse and clear the roadway were unsuccessful, Clear-Out, an aerosol tear gas, was deployed in short bursts in the area of the sidewalk and street in an attempt to disperse the crown and regain control of the roadway.[13]

In the instant case, the plaintiff presents no evidence to rebut the defendants' evidence showing that the circumstances surrounding the deployment of tear gas on September 25, 2011 were tense and uncertain, and that the tear gas was only deployed *after* officers attempted to disburse the crowd in numerous ways that did not involve tear gas, including – according to the Affidavit of Jeffery Schmidt – "using verbal instructions, enlisting the assistance of members of the crowd, requesting assistance from event organizers and participants, and other non-physical tactics." None

---

[13] Affidavit of Jeffery Schmidt, attached as Exhibit "A" to defendants' Motion for Summary Judgment, Doc. 18

of the foregoing tactics were successful. Additional evidence – uncontroverted by the plaintiffs – shows the increasingly violent nature of the crowed on the night in question.

The plaintiffs do not dispute the evidence offered by the defendants nor do they plaintiffs offer any evidence to controvert the nature of the incident in question as characterized by the defendants. The only argument set forth by the plaintiffs in their opposition brief is that the defendants were on notice that the use of tear gas could constitute excessive force by virtue of the Ninth Circuit's decision in *Headwaters Forest Defense v. County of Humboldt*, 276 F.3d 1125 (9th Cir. 2002). The issue in *Humboldt* – a case out of the 9th Circuit – was whether the use of pepper spray on non-violent environmental activists during a peaceful protest against the logging of redwood trees constituted excessive force in violation of the Fourth Amendment. The police officers used the pepper spray to cause the protestors to release themselves from devices they used to chain themselves together. *Humboldt*, 276 F.3d at 1127-28. The district court granted summary judgment in favor of the individually-sued police officers, finding the officers were entitled to qualified immunity. *Id.* at 1129. The Ninth Circuit reversed, concluding the officers were not entitled to qualified immunity, noting "the use of pepper spray on the protestors' eyes and faces was plainly in excess of the force necessary under the circumstances, and no reasonable officer could have concluded otherwise." 276 F.3d at 1131.

The facts of *Humboldt* are readily distinguishable from the facts of the instant case. In *Humboldt*, the pepper spray in question was sprayed *into the eyes and faces of non-violent peaceful protestors* by the defendant police officers. In the instant case, unnamed deputies sprayed tear gas into an unruly crowd of festival-goers who ignored the pleas of police officers to disperse and continued to block public roadways in violation of Louisiana law despite numerous non-physical

attempts to disperse the crowd. No one specific individual was targeted, and the use of the tear gas was used as a measure of last resort. Under these circumstances, this Court concludes the use of tear gas in the instant case was "objectively reasonable." Given the crowd's refusal to adhere to the officers' warnings, this Court concludes the deputies acted within their authority to disperse the crowd with tear gas in order to unblock the streets and remove the hazards to others.

Considering the foregoing, Sheriff Ackal is entitled to qualified immunity on the plaintiffs' Fourth Amendment claim of excessive force, and plaintiffs' §1983 claims against Sheriff Ackal based on the Forth Amendment are, therefore, DENIED AND DISMISSED WITH PREJUDICE.

**2. Sgt. Garcia**

The Court now examines the plaintiff's Fourth Amendment claim against Sgt. Garcia. Review of the record in this matter shows the plaintiffs have not alleged a Fourth Amendment violation against Sgt. Garcia. The plaintiffs do not allege that Sgt. Garcia personally used tear gas or that she directed or dispatched anyone to use tear gas. Despite being conflated into the "defendants" who are alleged to have violated the plaintiffs' Fourth Amendment right against the use of excessive force, no facts are alleged that Sgt. Garcia committed any violation of the Fourth Amendment, either personally or by way of supervisory authority. Consequently, the Court concludes the plaintiffs have failed to allege a constitutional violation against Sgt. Garcia under the Fourth Amendment, and plaintiffs' §1983 claims against Sgt. Garcia based on the Forth Amendment are DENIED AND DISMISSED WITH PREJUDICE.

**3. Fourteenth Amendment Claims**

Summary judgment is also proper on plaintiffs' Fourteenth Amendment claims against Sheriff Ackal and Sgt. Garcia. First, the Court notes the plaintiffs have not specifically alleged

whether they assert claims of procedural or substantive due process, or both, in their complaint, only that the defendants' actions are a "clear violation" of the "14th Amendment."[14]

In *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held " all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." The Court reasoned that because "the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* at 395.

In the instant case, the plaintiffs' excessive force claims fall squarely within the scope of the Fourth Amendment, and therefore must be analyzed according to its principles, and not under the generalized notion of Fourteenth Amendment substantive due process.

To the extent the plaintiffs allege a claim for procedural due process, such claim is not cognizable under §1983 in the instant case. Procedural due process concerns the fundamental fairness of a state's procedures. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Procedural due process claims require a two-part analysis: (1) whether the plaintiff has a liberty or property interest that is entitled to procedural due process protection; and (2) if so, what process is due. *Id.* at 332–33. However, claims of procedural due process violations are not cognizable in federal court if adequate post-deprivation state tort remedies exist. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v.*

---

[14] *See* Plaintiffs' First Amended Complaint, Doc. 12, at ¶XII.

*Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir.1995) (same).

Applying this precept to the instant case, it is clear a claim of deprivation of procedural due process cannot proceed, because the plaintiffs have adequate post-deprivation state tort remedies to pursue a recovery for their alleged injuries, that is, plaintiffs may bring state tort actions against the deputies in question to attempt to recover for the injuries they allege. *See, e.g., Deshotels v. Norsworthy*, 721 F.Supp.2d 525, 535-36 (W.D. La. 2010) (J. Trimble.) (discussing state law claims of negligence/excessive force against police officers and noting that, unlike federal law under §1983, the "employer of a police officer is liable for the tort committed by the officer during the performance of his official duties."), *citing Jenkins v. Jefferson Parish Sheriff's Office*, 402 So.2d 669 (La. 1981). Accordingly, because there is are adequate post-deprivation remedies available to plaintiffs under Louisiana state law, the plaintiffs' §1983 claims based on alleged violations of the 14th Amendment's guarantee of procedural due process must be dismissed.

Considering the foregoing, the plaintiffs' §1983 claims based on alleged violations of the 14th Amendment's guarantees of both procedural and substantive due process are DENIED AND DISMISSED WITH PREJUDICE.

**4. Failure to Train and/or Supervise Deputies**

The plaintiffs' third cause of action alleges a "failure to oversee, supervise, train, control, and/or equip" the deputies who violated the plaintiffs' constitutional rights. This failure to train and/or supervise is alleged against both Sheriff Ackal and Sgt. Garcia.

The defendants allege Sgt. Garcia has no authority to establish policy or the training regimen for the Iberia Parish Sheriff's deputies. In an Affidavit submitted with the instant motion, Sheriff

Ackal attests "[Sgt.] Garcia . . . . . had [no] responsibility for developing, requiring, or directing the training of other deputies of the Iberia Parish Sheriff."[15] The plaintiffs have not rebutted this evidence with any evidence to the contrary. However, even assuming the allegations of the plaintiffs are true and both Sheriff Ackal and Sgt. Garcia did, in fact, train the deputies in question in their use of tear gas, this Court concludes the defendants are nevertheless entitled to qualified immunity on the plaintiffs' failure to train/supervise claims.

It is well-settled that in a §1983 action, a public supervisory official cannot be held liable under §1983 for the acts of his or her employees under a theory of *respondeat superior*. *Oklahoma City v. Tuttle*, 471 U.S. 808, 817-18, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *Monell v. Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). In a §1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009), *citing Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir.1998). Noted the court in *Goodman*:

> For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." Where a plaintiff fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability.* Furthermore, "for a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." Moreover, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective."

[15] *See* Affidavit of Sheriff Ackal, attached as Exhibit "B" to Motion for Summary Judgment, Doc. 18, at ¶5.

571 F.3d at 395 (emphasis added) (internal citations omitted). *See also Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011), *citing Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). In *Porter*, the court added:

> [D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." To establish that a state actor disregarded a known or obvious consequence of his actions, there must be "actual or constructive notice" "that a particular omission in their training program causes ... employees to violate citizens' constitutional rights" and the actor nevertheless "choose[s] to retain that program." "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference," because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Without cabining failure-to-train claims in this manner (or, logically, failure-to-promulgate-policy claims), a standard "less stringent" than deliberate indifference would be employed, and "a failure-to-train claim 'would result in de facto respondeat superior liability.'"

(internal citations omitted).

In *Ellsworth v. City of Lansing*, 34 F.Supp.2d 571 (W.D. Mich. Dec. 16, 1998) (J. Hillman), the plaintiffs – who included both picketers and area residents who alleged personal and psychological injuries after being exposed to tear gas deployed by police to break up a union's picketing action – alleged municipal liability for unconstitutional conduct on the basis of the city's alleged failure to train its officers in the appropriate use of tear gas in the circumstances of a demonstration or picketing.

In rejecting the plaintiffs' claim of failure to supervise and/or train, the court stated:

> Here, assuming that plaintiffs could demonstrate an actual constitutional violation, plaintiffs have failed to introduce a shred of evidence concerning a history of such violations. Moreover, plaintiffs have introduced no evidence regarding the adequacy of the city's training with respect to the use of tear gas or the handling of peaceful demonstrations. Plaintiffs asked no questions of defendants about training in the use of tear gas and introduced no evidence of the standards for such training in the industry. In contrast, defendants produced internal procedures for the use of force,

> including the use of chemical agents, and the guidelines for handling peaceful demonstrations by the mobile field force. Defendants also introduced a record of each officer's certification of training in mobile field force procedures.
>
> [. . . ]
>
> In sum, plaintiffs have failed to introduce any evidence to suggest the manner in which such training and procedures were inadequate. Instead, plaintiffs' argument turns only upon their claim that the police mishandled the situation. Regardless of the constitutionality of police conduct in the instant case, the absence of evidence concerning the adequacy of training entirely undermines plaintiffs' claims of municipal liability.

*Ellsworth*, 34 F.Supp.2d at 577 (internal citations omitted).

In the instant case, although the defendants have not produced copies of the Department's internal procedures for the use of force, in his Affidavit, Sheriff Ackal attests that pursuant to Department policy, deputies who are authorized to use Clear-Out tear gas are trained in its proper use as a crowd control device.[16] The plaintiffs put forth no evidence controverting the evidence of training, nor do the plaintiffs show a causal connection between a lack of training on the part of the deputies who used the tear gas and the plaintiffs' alleged injuries. It is not sufficient to simply allege a "failure to train" without more. As the court stated in *Porter*, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference," because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." 659 F.3d at 446.

Here, no pattern of the unconstitutional use of tear gas is alleged. Nor does this Court conclude that the use of tear gas under the circumstances of this case constitute "deliberate indifference" to the obvious consequences of the use of tear gas. In short, this Court concludes the

---

[16] *See* Affidavit of Sheriff Ackal, attached as Exhibit "B" to Motion for Summary Judgment, Doc. 18, at ¶4.

plaintiffs have "failed to introduce any evidence to suggest the manner in which such training and procedures were inadequate." As in *Ellsworth*, the plaintiffs merely allege that the police mishandled the situation. Thus, as in *Ellsworth*, ""[r]egardless of the constitutionality of police conduct in the instant case, the absence of evidence concerning the adequacy of training entirely undermines plaintiffs' claims of municipal liability." Because the Court concludes plaintiffs fail to establish deliberate indifference, the Court need not address the other two prongs of supervisor liability, and the inquiry ends at this stage.

Considering the foregoing, both defendants are entitled to qualified immunity on the plaintiffs' §1983 claims of failure to train and/or supervise, and the foregoing claims are DENIED AND DISMISSED WITH PREJUDICE.

## V. State Law Negligence Claims

The remaining claims in this lawsuit are the plaintiffs' state law negligence claims alleged against both defendants pursuant to Louisiana Civil Code Article 2315. The Court has subject matter jurisdiction over the foregoing claims by virtue of its supplemental jurisdiction, 28 U.S.C. §1367, which states:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
>
> [. . . . ]
>
> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
> (1) the claim raises a novel or complex issue of State law,

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(a) & (c).

In the instant case, this Court has dismissed all claims over which it has original jurisdiction, concluding the defendants in this matter are entitled to qualified immunity on all of the federal claims alleged. Considering the foregoing, this Court declines to exercise its supplemental jurisdiction over the Louisiana state law claims of the plaintiffs alleging negligence on the part of Sheriff Ackal and Sgt. Garcia, and the foregoing claims are DISMISSED WITHOUT PREJUDICE.[17]

**VI. Conclusion**

Considering the foregoing,

IT IS ORDERED that the "Motion for Summary Judgment" [Doc. 18] filed by defendants Sheriff Louis Ackal and Sergeant Carmen Garcia is GRANTED. All of the plaintiffs' federal §1983 claims are DENIED AND DISMISSED WITH PREJUDICE on the basis of qualified immunity. The Court declines to exercise its supplemental jurisdiction over the Louisiana state law claims of the plaintiffs alleging negligence on the part of Sheriff Ackal and Sgt. Garcia, and the foregoing

[17] A district court may decline to exercise supplemental jurisdiction over state-law claims if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 395 (5th h Cir.1992). When a district court exercises its discretion and dismisses the state-law claims, it must do so without prejudice so that the plaintiff may refile in the appropriate state court. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir.1999).

claims are DISMISSED WITHOUT PREJUDICE.[18]

THUS DONE AND SIGNED in Lafayette, Louisiana, this 2 day of December, 2013.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

[18] The dismissal of the foregoing claims does not dispose of the entire matter, as the claims against "Deputy Broussard," who has made no appearance in this matter, remain pending. Thus, because one defendant has not yet answered the plaintiffs' complaint, these rulings do not impact the remaining defendant.